Filed 3/27/25  P. v. Ralls CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br>CORMARIEE LASEAN RALLS,<br><br>      Defendant and Appellant. | A169683<br><br>(Alameda County<br>Super. Ct. No. 156703B) |

Defendant Cormariee Lasean Ralls petitioned the superior court, pursuant to Penal Code section 1172.6 (former § 1170.95),[1] for resentencing on his conviction for attempted murder.  Following an evidentiary hearing, the court denied the petition, finding defendant was the shooter and therefore ineligible for resentencing.  On appeal, defendant contends substantial evidence does not support the court's finding.  We affirm.

### BACKGROUND

In April 2007, Terry Griffin, Lamart Scoggins, Willie Lewis, and Shea Bradford were hanging out in front of Willie's house in Oakland, when Scoggins noticed a green Buick driving slowly down the street.  The car had

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

tinted windows, was driving "suspicious," and stopped just past where Scoggins and his group were standing.

Griffin stated there were two people inside the car, the driver, who he identified as Rashaud Richardson,[2] and the front seat passenger. When the passenger door opened, the first thing Griffin noticed was the passenger was holding a black, semiautomatic handgun or "Mac-11," with what he thought was an extended clip. He was not sure if the driver had a gun. Griffin ran. When he turned around, he saw a "muzzle flash" but was not sure if it was coming from the passenger's gun. He got a few blocks away, and was alone. When he returned to the scene, he saw Bradford "laying on the ground," bleeding. Bradford had been shot in the back of the head, and there was a "lot of blood on the ground." Griffin was aware of "an altercation a couple years back" between Richardson and Scoggins. After the shooting, Richardson called Griffin to " 'clear the air' " and " 'squash it so there will be no problems.' "

Scoggins stated, when the car stopped, three men got out and one of the passengers—he did not say where the passenger was sitting—was holding a "Mac-11" gun or a black handgun, with an extended magazine. Scoggins could see the passenger's gun while the passenger was seated, and when the passenger got out of the car, he began firing. He did not see the passenger "walk around at all"; he saw the "gun coming out the car, then coming pointing out the car." As soon as he heard shots, Scoggins took off, running "a couple blocks away." When he stopped, only Willie remained with him.

---

[2] Throughout the record, Rashaud Richardson's name is sometimes spelled Rashaud, and at other times Rashad. In this opinion, we use Rashaud as it appears on the amended consolidated information.

When asked about Richardson, the driver, Scoggins stated he and Richardson had had "a little altercation" after Richardson came to his house with a gun.

Lewis also stated three people exited the vehicle, the driver and a front and rear passenger. He stated one of the passengers, he did not say which one, exited the car and began shooting. He did not see the driver shooting. He also took off running when the shooting began.

Bradford stated he saw a car turn around and park in front of Willie's house. He thought there were three people in it, and when they got out, he thought "all of them had a gun." When the passenger in the backseat got out, he was holding a black, "Mac-11" handgun. As soon as they got out of the car, Bradford took off running. He did not recognize anyone, although he stated all three occupants were Black. As he was running, Bradford felt "something hit [his] head," it "felt like a slap," and he fell to the ground. Bradford got up and started running again and "stumbled." He "got hit again" and fell back to the ground. The next thing he remembered was waking up in the hospital a month later.

Oakland Police Sergeant Wendy Chan testified she was the primary investigator on defendant's and Rashaud Richardson's cases. In the course of the investigation, Oakland Police seized a four-door green Buick, which Richardson admitted to driving. Chan also recovered a nine-millimeter Glock from Rashad Robinson, a known associate of Richardson's. Chan discovered Robinson had been arrested on the same day as the shooting—seven hours later—"with that gun on an unrelated offense." The shell casings recovered at the scene were later determined to be "consistent with" the gun recovered from Robinson.[3]

---

[3] The above factual background was taken from the preliminary hearing transcripts for Ralls and Richardson.

In October 2007, Sergeant Chan interrogated defendant. He admitted to meeting up with Richardson who was driving a green Buick. Only he and Richardson were in the car; Richardson was driving and defendant was in the front passenger seat. As they were driving, Richardson pointed out someone with whom he had had a fight "a while back" standing in front of an apartment with some other men. Defendant and Richardson got out of the car, and defendant saw two of the men pull out guns, but they did not shoot. Defendant "tried to pull out [his] gun and one shot went off." He "shot one shot" and then he heard "six other shots [go] off, like around like six or seven other shots went off." According to defendant the shots were coming from "[t]owards like the back of the car." He did not know exactly where they came from because he "ducked and covered." "Shots was fired though," and there were "people across the street[, a]nd there was a lot of people around. . . ." Defendant and Richardson got back into the car and left.

Defendant maintained he had "[a] little .22" that was silver with a brown handle and that it had five bullets in it. Defendant said he found his gun, the .22-caliber, in North Oakland near a trash can. When asked where the gun was, defendant stated, "[l]ike a week" after the shooting, he was walking down the street, and "just some random" guy approached him and asked him if he had "some guns for sale?" Defendant, who had the gun on him, then sold it for $100. Although he had seen Richardson with a silver and black handgun prior to the day of the shooting, on the day of the shooting, he never saw Richardson with a gun.

In 2008, defendant pleaded no contest to attempted murder (§§ 187, subd. (a), 664) and admitted personal use of a firearm (§ 12022.53, subd. (b)) and personal infliction of great bodily injury (§ 12022.7, subd. (a))

4

enhancements.[4]  The parties stipulated to a factual basis for the plea and admissions based on the preliminary examination transcript.  The trial court sentenced defendant to a 20-year term, consisting of a seven-year midterm for the attempted murder charge, and 13 years for the enhancements.

In April 2022, defendant filed a petition for resentencing pursuant to section 1172.6 declaring he could not be presently convicted of attempted murder because of the changes made to sections 188 and 189, effective January 1, 2019, and requesting appointment of counsel.  The court appointed counsel, ordered respondent to file a response, and set a hearing.  The court subsequently determined a prima facie case had been made and issued an order to show cause (OSC) why relief should not be granted.

In their return to the OSC, the People maintained defendant was ineligible for resentencing because he was an actual shooter, or alternatively, "a major participant acting with reckless indifference to human life."  The People attached defendant's October 2007 statement to police made six months after the shooting, as well as the transcript from Richardson's preliminary hearing, at which Griffin, Scoggins, and Sergeant Chan testified.

Defendant filed a reply contending the People had failed to meet their burden and there was insufficient evidence that he shot the Glock nine-millimeter or that he acted with express malice.  Defendant suggested Richardson and a third person, defense posited Robinson, shot at the four men and defendant "was the patsy and a convenient fall guy for the two Rashads [*sic*]."  Defendant attached a statement Scoggins gave police on the night of the shooting, where he stated he saw three Black males exit the

---

[4]  Pursuant to the plea, the court dismissed the remaining count of assault and two counts of assault with a semiautomatic weapon.

5

Buick and that the passenger was holding a Mac-10 or Mac-11 firearm in his right hand; and portions of the transcript from his preliminary hearing.

In preparation for the section 1172.6 hearing, the parties stipulated to the following: when Oakland Police Officer Chris Keden searched Rashad Robinson on April 29, 2007—seven hours after the shooting—he recovered a Glock 19, nine-millimeter handgun, loaded with 25 rounds of ammunition, from Robinson's front waistband; a search of Rashaud Richardson's bedroom revealed a black cardboard shoebox, with documents bearing Richardson's name and a "black ammunition magazine, possibly for a Mac 11"; Oakland police recovered five expended cartridge cases and one bullet from the scene of the shooting, and Oakland Police Criminalist Lansing J. Lee determined the five cartridges were fired from a single firearm; and Lee concluded the five cartridges were fired by the Glock nine-millimeter Luger pistol recovered from Robinson.

At the evidentiary hearing, the trial court indicated it had read the parties' briefing and attachments, including defendant's and codefendant Richardson's preliminary hearing transcripts, defendant's statement to police, as well as the parties' stipulation. The court indicated it intended to admit all of the evidence except for portions of the preliminary hearing testimony where Sergeant Chan relayed things Richardson had told her. After hearing from counsel, the court took the matter under submission.

In a seven-page statement of decision, the court denied the petition, finding the People had met their burden in proving, beyond a reasonable doubt, that defendant—if tried today, after the changes to the law of attempted murder—would still be convicted. After summarizing the relevant evidence, the court found it was undisputed Richardson was the driver and defendant the front passenger, and defendant admitted he had a handgun

6

and fired a shot from that gun. Defendant also admitted Richardson was unarmed, and outside of defendant's "self-serving statement about being threatened by armed men," there was no evidence any of the potential victims were armed. The court did not find defendant's statement that he "possessed a small-caliber handgun, and fired it once, unintentionally, into the ground" credible. All four witnesses "testified consistently that the 'passenger' fired in their direction, with an extended magazine handgun described as a Mac 10 or 11," each witness heard multiple shots, fired in rapid succession, as they ran away. The court found defendant was the passenger to which the witnesses referred. The court acknowledged the inconsistencies in the witnesses' testimony but found they were "immaterial" to its ultimate conclusion. "Whether there were two or three occupants in the vehicle," the court concluded, "the facts are undisputed that the car from which at least one occupant shot at the victims was occupied by, at a minimum [defendant] and Richardson, and that Richardson was unarmed." The "only reasonable inference to be drawn," continued the court, "is that [defendant] fired the Mac 10 or 11 or Glock at the victims and, afterward, Richardson and/or (ultimately) Robinson took possession of the Glock."

The court determined defendant fired multiple rounds in the direction of Bradford and the others from about 20 to 35 feet away, and whether another person also fired was immaterial, because defendant's actions were sufficient to support an inference to kill. The court found it relevant defendant knew of Richardson's prior altercation with Scoggins, because "the malicious motive of one actor may be communicated to another actor." The court stated, the "notion [defendant] (a) just happened to possess a loaded firearm at that time, and (b) withdrew and accidentally fired it in an aborted self-defense effort, without any nexus to Richardson's animus toward

7

someone in the group of victims, is not credible." Finally, the evidence—the recovered gun from Robinson and recovered ammunition from Richardson—tended "to link the most relevant firearm (if there was more than one) in the shooting to Richardson" but that evidence was neutralized by the fact that defendant "himself admits Richardson did not possess a firearm during the shooting." Moreover, there was no evidence of ballistics from a small caliber gun like defendant claimed to have accidently discharged.

The court concluded defendant or someone else possessed and fired the recovered Glock. Given that defendant admitted to exiting the car and firing a weapon, that all four witnesses testified the " 'passenger' " fired at them, and the "aforementioned status of the ballistic evidence," the court found the most "reasonable inference from the totality of the evidence, construing it in favor of [defendant] to the extent that there are competing inferences, is that [defendant] fired the Glock, which Richardson previously possessed and, subsequently, repossessed and transferred to his associate Robinson."

## DISCUSSION

In 2018, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, [and] was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), quoting Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, Senate Bill 1437 amended sections 188 (defining the "malice" required for murder) and 189 (defining first and second degree murder) to eliminate the natural and probable consequences doctrine and to significantly narrow the scope of the felony-murder rule. (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*);

8

*Lewis*, at p. 959.)  Senate Bill 1437 also created a procedure (formerly at section 1170.95, now at section 1172.6) for defendants of murder under prior law to seek retroactive relief if they "could not be convicted under the law as amended." (*Lewis,* at p. 959; *Curiel,* at p. 440.)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) made amendments to, inter alia, "[c]larif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

As relevant here, "attempted murder as a direct perpetrator or as a direct aider and abettor remain viable theories of liability, while attempted murder as an aider and abettor under a natural and probable consequences theory does not." (*People v. Hill* (2025) __ Cal.App.5th __, __ [2025 Cal.App. LEXIS 117, 2025 WL 654530, at p. * 4] (*Hill*).)  "In relevant part, section 1172.6 currently provides, '[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of . . . attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be

9

convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1172.6, subd. (a).)" (*Ibid.*)

" 'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief." [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." ' (*Strong, supra*, 13 Cal.5th at p. 708, quoting § 1172.6, subd. (c).)" (*Hill, supra*, ___ Cal.App.5th at p. ___ [2025 WL 654530, at p. *4].)

"Following the issuance of an order to show cause, if the prosecution does not stipulate that the petitioner is eligible for resentencing, 'the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)' (*Strong, supra*, 13 Cal.5th at p. 709.)" (*Hill, supra*, __ Cal.App.5th at p. __ [2025 WL 654530, at p. *4].)

We review a trial court's denial of a section 1172.6 petition for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) "Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Ibid.*) " '[A]ttempted murder requires the specific intent to kill

10

and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).)

Here, the evidence shows defendant joined Richardson in his car. Richardson drove to where the group of men were, pointing out Scoggins to defendant. Defendant admitted he was aware of Richardson's history with Scoggins. He also admitted only he and Richardson were in the car and he was the front-seat passenger. He admitted he was armed, fired his weapon, and he did not see Richardson with a gun. Although defendant maintained two of the four men in the group had weapons, he admitted they did not shoot, and although he heard multiple shots, he admitted he did not see anyone else with a gun. All four witnesses stated the passenger fired a Mac-10 or Mac-11 gun. None mentioned a smaller weapon.

"[I]n reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, on review of the entire record in the light most favorable to the judgment, any rational trier of fact could have found elements of the offense beyond a reasonable doubt." (*People v. Young* (2005) 34 Cal.4th 1149, 1180 (*Young*).) Applying this standard, there is sufficient evidence to support the trial court's finding beyond a reasonable doubt that defendant was the shooter and acted with specific intent.

In asserting the evidence was insufficient to support the finding he was the shooter,[5] defendant first points out inconsistencies in testimony. Namely, that of the four witnesses, three of them—Bradford, Scoggins, and Lewis— stated they saw three people get of the Buick, and all four stated a passenger fired a Mac-10 or Mac-11, while defendant maintained only he and Richardson were in the car and he only had a .22 caliber. Defendant states this inconsistency presumably means there were three passengers, "the

---

[5] Defendant makes no argument as to specific intent.

11

driver and a front and rear passenger," and while defendant admitted to being the front passenger, "the evidence is unclear as to . . . which passenger did the shooting." He notes only Griffin said the front passenger shot but Bradford stated it was the back passenger, while Lewis and Scoggins only referred to a " 'passenger' " shooting.

The trial court acknowledged the inconsistencies in the testimony. But as the sole judge of credibility and resolver of inconsistencies, the trial court was allowed to, and did reject, defendant's statement that he was only armed with a .22-caliber weapon and "accidentally fired it in an aborted self-defense effort." The evidence bore this out. As the court observed, "while ballistics at the scene match the firearm later found on Robinson, there is no evidence of ballistics from the small caliber gun that [defendant] claims to have accidentally discharged" nor was there any evidence "the four potential victims" were armed. The court went on to state, the fact police later recovered ammunition from Richardson and the gun from Robinson, does not negate the fact that, by defendant's own admission, Richardson was unarmed and Robinson was not present. The court concluded "the most reasonable inference from the totality of the evidence" was that "to the extent that there are competing inferences," defendant fired the weapon, "which Richardson previously possessed and, subsequently, repossessed and transferred to his associate Robinson."

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Young, supra,* 34 Cal.4th at p. 1181; see

12

*People v. Jennings* (2010) 50 Cal.4th 616, 639 ["We presume in support of the judgment the existence of every fact the [trier of fact] reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."].)

Defendant asserts the trial court's two reasons for finding he was the shooter are not persuasive—those being the absence of ballistic evidence and the trial court's finding defendant was not credible. As to the trial court's first reason, defendant asserts that "the chances of the police searching for a .22 caliber bullet are about zero." He cites to no evidence supporting this assertion. Furthermore, not one of the witnesses mentioned a .22-caliber weapon like defendant described. Rather, they all mentioned a Mac-10 or Mac-11 with an extended clip, and defendant himself stated Richardson was unarmed and the witnesses did not shoot. In short, beyond defendant's attestation, there was no evidence that any other weapon but the recovered Glock, was present at the scene. As to the trial court's second reason— defendant's credibility—defendant maintains that although "[he] almost certainly was not honest with the police about everything," there were "no parts of his statement that are refuted by the physical evidence" and the court "was ready to believe [his] statement that Richardson was not armed." However, a trier of fact is not required to either believe or disbelieve a witness entirely, and here the trial court could believe defendant's statement that Richardson was unarmed and that defendant, who admittedly was armed, was armed with a different weapon than he claimed. (See *People v. Williams* (1992) 4 Cal.4th 354, 364 ["a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others"]; *People v. Ibarra*

13

(2007) 156 Cal.App.4th 1174, 1191 [the trier of fact " 'remains free to choose the witness or witnesses it believes and what part of a witness's testimony it finds believable,' " quoting *People v. Anderson* (2007) 152 Cal.App.4th 919, 940].)

## DISPOSITION

The order denying defendant's petition for resentencing under section 1172.6 is affirmed.

_____
Banke, Acting P. J.

We concur:


_____
Langhorne Wilson, J.


_____
Smiley, J.

A169683, People v. Ralls

15